IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAM BABYARTIKEL GMBH, and BAMED AG, | Civil Action No.: 07-608-*** |
| Plaintiffs, | |
| v. | |
| LUV N' CARE, LTD. and, MUNCHKIN, INC. | |
| Defendants. | |

**LUV N' CARE'S REPLY BRIEF IN SUPPORT
OF ITS MOTION TO TRANSFER OR DISMISS**

**I.    BAMED AND MAM LACK LEGITIMATE REASON TO DISTURB THE FIRST-
TO-FILE RULE AND MISREPRESENT THE RECORD.**

Knowing that the first-to-file rule is well established in this district, Bamed and Mam spin false claims regarding alleged bad faith by Luv n' care to dislodge the suit Luv n' care previously filed in Texas. Those claims are rife with misrepresentations.

Furthermore, Plaintiffs' response papers show no connection between them and Delaware making this particular district a necessary or indispensable one for their claims. In fact, those foreign corporations only sued here after service of Luv n' care's Texas suit was attempted on them. The filing here maximizes the potential inconvenience to Luv n' care when Plaintiffs could have easily pursued their alleged claims in the first-filed suit.

**A.    *LUV N' CARE HAS FULLY ACTED IN GOOD FAITH*.**

As Luv n' care itself noted in its initial motion, it is correct that LNC filed a Declaratory Judgment proceeding in Texas on December 1, 2006 and did not engage in service of process until a number of months later.  However, Bamed's allegation that Luv n' care "feigned" interest in negotiation is a complete misstatement and is knowing distortion of the facts.  In fact, Luv n' care specifically informed Bamed of its intent to negotiate a settlement and also have its attorneys pursue the legal avenues available to them.

The dispute began when several letters[1] were forwarded to Luv n' care ("LNC") in November 2006 accusing LNC of infringement.  Luv n' care's CEO, N. Edward Hakim, promptly responded to Bamed by email on November 24, 2006 (*see* Exhibit B hereto) as follows:

> "I will advise our attorneys that I have decided to negotiate with you directly, <u>but I have instructed them to proceed forward until I think a settlement between the two of us is realistic</u>."

(Underlining added ).  It is apparent that Bamed was notified from the very outset that Luv n' care was having its attorneys proceed with legal action while it pursued a concurrent settlement track. This was stated in LNC's first response to Bamed, and is exactly what its CEO did, *i.e.*, he had his attorneys file a Declaratory Judgment proceeding in Texas while attempting to negotiate a settlement. Luv n' care did not want a meritless suit for infringement of an invalid patent indefinitely hanging over its head, so it promptly filed a declaratory judgment action for invalidity and noninfringement.

---

[1] Specifically, an overseas law firm (Sonn & Partner) wrote a letter to Bird and Bird (Plaintiff's overseas attorneys), on November 6, 2006 and then Susanna Wagner, Chief Operating Officer of Defendant, wrote N. Edward Hakim, CEO of Plaintiff, a letter dated November 22, 2006.

Subsequently, Mr. Hakim negotiated with Ms. Wagner in good faith as Mr. Hakim said he would, and the parties exchanged repeated correspondence. It is thus noteworthy that Bamed's representations here are the opposite of its representations in a concurrent proceeding in Germany. (*See e.g.*, Exhibit C (excerpts of settlement negotiation letters as submitted by Bamed to the German Patent Office)). In Germany, Bamed requested an extension of Bamed's time to respond on the grounds that the parties were engaged in *bona fide* settlement discussions, pointing to <u>the very same settlement correspondence</u> it points to in this case. (*See* Exhibit C hereto).

The case in Germany is an invalidity action filed by Luv n' care before the German Patent Office to invalidate a Bamed pacifier patent there, so it served Bamed's interest to take the opposite position. When it wanted an extension in Germany, Bamed took the position that the parties were engaged in *bona fide* negotiations; when it wants something different here, it represents based on the same correspondence that the negotiations were not.

Bamed's counsel's attempt to mischaracterize the sequence of events is deliberately misleading and virtually defamatory. Luv n' care believed that Plaintiff's patents would be invalidated if it proceeded and specifically told Bamed so. (*See e.g.,* Exhibit B). But at the same time, it attempted to negotiate a settlement in good faith for months. Bamed's claim that the negotiations were in "bad faith" does not even make sense – if Luv n' care were not interested in settling there would have been no negotiations and Luv n' care would have just proceeded forward with its complaint. Offers to settle matters are done every day after suits are filed, and this is exactly what Mr. Hakim did. Indeed, had Bamed accepted Luv n' care's offer, no further court proceedings would have been necessary.

Ultimately, when negotiations were not sufficiently fruitful, LNC proceeded to move forward in late July 2007. Counsel was not aware that there is no language such as "Swiss", and as a result of inadvertence or a misunderstanding between Luv n' care's counsel and the translator, the suit was translated into Swedish. That error was obviously unintentional. There is no reason why Luv n' care would spend a great deal of money to have a document translated and served in the wrong language, when it could have just as easily have had the document translated and served in the right one. Plaintiffs's allegations of nefarious conduct are ludicrous, and do not pass the laugh test.

Likewise, in connection therewith, Exhibit D is attached hereto which is a copy of a certified letter to Rick Hamilton of PFI Services Company, which is a national company that effectuates service via the Hague Convention on out of country defendants, and which handled the service for Luv n' care. PFI, in fact, conducts service for the U.S. Department of Justice and the U.S. State Department. *See* https://www.pfiserves.com/AboutUs.html. It is highly experienced, handles thousands of service requests such as this one every month, and did not catch the error either. The Court will readily note that Plaintiff sent the translated version of the Plaintiff's Summons for Service in Switzerland on August 15, 2007 approximately seven weeks before Bamed and Mam filed suit here in Delaware. Exhibit D includes an email from Plaintiff's attorneys' office to Rick Hamilton seeking a status on the aforementioned service on the Defendant as well as a request as to how long it would take to effectuate the service. Even this email request was sent approximately two weeks before the Plaintiffs filed suit in Delaware.

To recap, it is respectfully pointed out that Luv n' care gave notice to Bamed of its intention to have its attorneys proceed forward from the very outset, and it did just that, while nonetheless extending a courtesy to Bamed to see if negotiations could work out before it tried to effectuate

4

service. Defense counsel's allegations are totally improper and in fact illogical. What possible benefit was there to Luv n' care in letting the period of time in question elapse and engaging in multiple settlement proposals if it were not negotiating in good faith to resolve the matter? For defense counsel to make such allegations when it is well aware of the numerous settlement efforts made between the parties over months shows that it makes its statements with the sole intent of misleading this Honorable Court, without concern for what actually happened.

After the error in translation which caused return of the service copy from the Swiss authorities, Luv n' care was forced to file a Motion for a Second Extension of Time in Texas. Bamed's claim that Luv n' care attempted to "conceal" the present suit from the Texas Court is yet another attempt to mislead this Court with falsehoods. It is important to note that Luv n' care's request for the second extension was filed on October 4, 2007 (*see* Exhibit F hereto), whereas Bamed's suit here was also filed on October 4, 2007. Luv n' care had no knowledge of the Delaware suit when it filed its motion for a second extension. Bamed is well aware that it did not serve Luv n' care until after Luv n' care filed its motion – the summons was not even issued until October 5, 2007, as shown by the records of this Court. Furthermore, service was made on the Secretary of State, so that Luv n' care had no knowledge of it until much later. Bamed's allegations are scurrilous and false.

Bamed's claim that Luv n' care's "bad faith in seeking negotiations" was a pretext to gain an improper advantage is also totally without merit and completely illogical. It should be noted that it was Bamed who sought to negotiate with Luv n' care not vice versa. If Luv n' care wanted to seek "an advantage", it would have gone ahead immediately after filing suit and not wait until months later for service, during which time Luv n' care carried on regular, repeated, good faith negotiations

5

with Bamed.  It was actually to Luv n' care's advantage to go ahead and serve the complaint immediately so that it could proceed before the federal court in the Eastern District of Texas. Delaying such service certainly did work to its advantage, and defense counsel's statements to the contrary are totally meritless.

Moreover, the fact that service on Luv n' care was perfected before the Texas complaint was served on Bamed is of little consequence since the suit for Declaratory Judgment was filed over ten months before the action in Delaware.  Luv n' care's counsel respectfully points out that Bamed has not shown one request by Luv n' care asking to have Bamed or Mam delay filing of legal proceedings.  On the contrary, as pointed out above, the <u>initial response</u> from Luv n'care's CEO to Bamed's Chief Operating Officer put Bamed on notice that Luv n' care intended to have its attorneys move forward even while settlement was attempted.

## B.    *BAMED ENGAGES IN CONTRADICTORY REPRESENTATIONS REGARDING THE DESIGN PATENT.*

As far as Bamed's claims that Mam is a "necessary and indispensable party" for the issues in the design patent, it is difficult to determine which of Bamed's claims are false and which are true on this point.  Counsel previously represented the opposite to Luv n' care; namely, that Bamed is the proprietor of the design patent (US D441,083 S) owning the exclusive rights thereto.  *(See* November 7, 2006 letter from Sonn and Partners to Luv n' care, Exhibit A hereto).  Luv n' care's choice to sue Bamed and not Mam is not at all "inexplicable": it was based on Bamed's counsel's own representation.

Either way, Mam can be easily added to the suit in Texas.  There is easily jurisdiction over it there. (*See* Exhibit G hereto, Declaration of Nouri E. Hakim).  Mam has regularly displayed and

offered its products for sale in Texas at the Juvenile Products Manufacturers' Association (JPMA) Trade Show in Dallas. It did so for years (until that show was recently moved to Florida). For example, attached hereto are articles referring to Mam's exhibition in 1997 and another article refers to its exhibition in 2004. (*See* Exhibit E). These are merely two examples; in fact, it is Luv n' care's understanding and recollection that Mam has exhibited every year at that show. Bamed and Mams' submissions on that point are simply misleading.

It is likewise submitted that Bamed also has continuous, systematic and on-going contacts with Texas. Specifically, it is Luv n' care's belief that Bamed's merchandise is shipped to warehouses in Texas to be distributed throughout Texas (*see* Exhibit G, Declaration of N. Edward Hakim), which it intends to bring to the Texas court's attention, and which forms sufficient basis for jurisdiction. Those issues can, of course, be further addressed in the Texas action.

### C.   *BAMED AND MAM ARE NOT TRULY CONCERNED ABOUT JUDICIAL ECONOMY.*

Bamed and Mam's allegations that they are concerned about judicial economy ring completely hollow. In fact, as their moving papers show, they instituted the present action against Luv n' care and Munchkin in Delaware <u>after</u> they became aware that Luv n' care had filed a suit in Texas. (*See* Plaintiff's Response at 10). They could have easily pursued a suit and counterclaims against Luv n' care in the Texas action. They could have likewise sued Munchkin there. Texas would have been a very appropriate venue in view of the fact that all of the parties are believed to have been regular exhibitors at the JPMA trade show held in Dallas each year.

But Bamed and Mam did not do so. Instead, they chose to sue at a significant distance from Luv n' care's location. Neither of the plaintiffs were forced to sue in Delaware when a sister court

already had a case pending on these very issues. Rather, Plaintiffs' choice only serves to deliberately inconvenience Luv n' care and its witnesses. They are well aware that LNC's headquarters is less than 150 miles from the Eastern District of Texas, but is across the country from Delaware. Neither Bamed nor Mam – both of whom are foreign corporations – has alleged in their papers any legitimate need for their suit to be in this particular district.

### D. PLAINTIFFS' CLAIMS THAT THE TEXAS SUIT WAS ANTICIPATORY DO NOT CHANGE THE LEGAL RESULT.

As shown above, Bamed and Mam distort the record to have this Court overlook the first action in Texas in contravention of the well-established rule favoring the first filed action. Plaintiffs' allegations that the Texas suit was anticipatory do not overcome the first-to-file rule, and their focus on such allegations distracts from the relevant issues. *Electronics for Imaging, Inc. v. Coyle,* 394 F.3d 1341, 1347 (Fed. Cir. 2005) (focusing on anticipatory nature of suit is an abuse of discretion).

The purpose of the Declaratory Judgment Act is to provide the allegedly infringing party relief from uncertainty, and to relieve it from having to abandon its enterprises due to a threat of liability hanging over it. *Id.* at 1346. This is particularly the case, as here, when that threat is not justified. It also particularly the case when Plaintiffs were aware of the first-filed suit and deliberately chose to sue in this district to create the conditions of which they complain. There was no "race to the courthouse" – Bamed didn't file its suit for over ten months after Luv n' care's filing, and it only did so in response to attempted service of the Texas suit. (*See* Plaintiff's Response at 10). Absent that, the threats Plaintiffs raised would still be hanging over Luv n' care's head.

The significantly increased convenience and availability of the witnesses in Texas, the availability of jurisdiction over all the parties in Texas, the nature of Bamed's misrepresentations

here, and the fact that Plaintiffs have no real connection to Delaware making it necessary for suit to proceed in this district, all confirm that transfer under the first-filed rule is warranted and prudent.

## II.   IN VIEW OF THE FACTS, BAMED AND MAM HAVE SHOWN NO REASONABLE BASIS FOR PERSONAL JURISDICTION IN THIS STATE.

As shown above, Plaintiffs' attacks on Luv n' care is a smokescreen of misleading statements to distract from the applicable and pertinent legal issues.  Turning to the issues actually applicable, the Plaintiffs do not dispute that Luv n' care has no direct connection with Delaware, with Luv n' care having no office, place of business, employees or so forth here.  Instead, Plaintiffs claim that Luv n' care is subject to jurisdiction because LNC's products were ultimately sold in Delaware by a third party who is outside Luv n' care's control.

Luv n' care did not ship any products to this district:  it shipped its products to Arkansas. The party who sent products here – Wal-Mart – did so unilaterally.  But the unilateral action of a third party to direct a product to its eventual end in the stream of commerce does not meet constitutional requirements for personal jurisdiction.  The 'purposeful availment' requirement of the Due Process Clause requires that a defendant not be haled into a particular court as a result of the unilateral activity of another party or a third person.  *See, Helicopteros Nacionales de Columbia S.A. v. Hall,* 466 U.S. 408, 417, (1984), *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985).

Indeed, while they claim to be offended by the shipment of the accused items to this particular district, Mam and Bamed fail to sue the very party who did actually ship here.  Their claim of particular damage in this district, and a particular need for suit due to sales here, is contradicted by the fact that Wal-Mart, the very actor who undisputedly sent the accused products directly into

9

this locale, is completely absent from this suit.  This again demonstrates the hollow nature of Plaintiffs' claims.

Moreover, there are a plethora of locales where Luv n' care was subject to suit based on the applicable facts.  As Luv n' care has admitted, it shipped the accused products to Wal-Mart in Arkansas. Thus, Plaintiffs could have sued Luv n' care in Arkansas based on the direct shipments there.  Or, Plaintiffs could have sued Luv n' care in Texas based on the fact that a prior suit on these very same issues was already pending, and/or based on LNC's appearances at the JPMA trade show. Or, Plaintiff's could have sued Luv n' care in Louisiana, the location of Luv n' care's corporate headquarters.  Luv n' care has a far more direct connection with quite a number of districts, without needing to base suit in this particular one based on a tenuous, or non-existent, connection with it.

It is abundantly clear that there was no real need for this suit to proceed in Delaware in view of the very many other districts with a far greater interest in the facts of this suit.  Bamed and Mam's protestations to the contrary are transparent and self-serving.  Indeed, Bamed and Mam are both foreign corporations and could have sued in any judicial district.  Luv n' care's size does not give Plaintiffs the right to sue anywhere without a solid constitutional basis, and in particular to choose a locale to maximize the inconvenience to Luv n' care.

To cover the nature of their conduct, Plaintiffs raise a series of red herrings.  For example, they raise Luv n' care's prior suit in the Southern District of New York.  The fact that Luv n' care once sued a foreign corporation in New York has absolutely no pertinence to the facts of this suit. LNC believed it could obtain jurisdiction in New York over an infringer in a case involving products and parties having nothing whatsoever to do with the products or parties of the present case.

Likewise, Luv n' care's suit in Louisiana against the Insta-Mix infringer also has no relevance. In that case, suit was fairly and properly brought based on its facts. Luv n' care sued in Louisiana since Insta-Mix had sent dozens of shipments of infringing products to Louisiana. Under the logic of the Insta-Mix case, the present suit should have been brought in Arkansas.

Admittedly, the question of whether stream of commerce jurisdiction or stream of commerce plus makes more sense as a matter of law is a long-debated one; arguments can and have been made by commentators and courts for both sides. But the mere fact that Luv n' care's products were sold here is not a sufficient basis for this suit. As the Supreme Court has held, the constitutional test requires fundamental fairness (*see, World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980)), and the fairness issue here is plainly in Luv n' care's favor. The plethora of jurisdictions having a <u>direct</u> nexus to Luv n' care's accused activities makes the present district – having <u>no</u> such nexus – an unfair one violating due process. Plaintiffs don't even have their own connection with this district. They are not headquartered here and have not alleged that they have any crucial connection to this State. This district is not even a remotely necessary one. The balance of equities plainly tilts in Luv n' care's favor.

Under Bamed and Mam's position, once a party sells a product anywhere in the U.S., it becomes subject to suit anywhere the product later ends up. Any third party's decision to resell a product somewhere else would automatically create jurisdiction in that new locale. As noted in LNC's opening brief, Plaintiffs' theory creates national jurisdiction from any local act and violates principles of federalism. *See Lesnick v. Hollingsworth & Voseco,* 35 F.3d 939, 945 (4th Cir. 1994).

## CONCLUSION

In summary, transfer of this action or dismissal is respectfully requested for the reasons discussed above, and as set forth in Luv n' care's opening brief.

WHEREFORE, for the foregoing reasons, LNC respectfully requests that this Court transfer the suit involving plaintiffs and LNC to the Eastern District of Texas, or in the alternative, dismiss plaintiffs' suit against LNC for lack of proper venue.

Alternatively, it is respectfully submitted that this case should be dismissed for lack of personal jurisdiction.  Luv n' care's sales of product to Wal-Mart in the State of Arkansas, without any further contacts with Delaware, does not comply with the constitutional requirements of due process.

Dated: January 28, 2008

Respectfully submitted,

/s/ David L. Finger
David L. Finger (DE Bar ID #2556)
Finger & Slanina, LLC
One Commerce Center
1201 Orange Street, Suite 725
Wilmington, DE  19801-1155
(302) 884-6766

Of Counsel:

Joe D. Guerriero, Esq.
Luv n' care, Ltd. General Counsel
3030 Aurora Avenue
Monroe, Louisiana  71201
Telephone:     (318) 338-3603
Facsimile:     (318) 388-5892
Email:  joed@luvncare.com

12

Morris E. Cohen, Esq.
Law Office of Morris E. Cohen, P.C.
1122 Coney Island Avenue
Suites 216-217
Brooklyn, New York  11230
Telephone:    (718) 859-8009
Facsimile:    (718) 859-3044
Email: mcohen@ipcases.com

Attorneys for Luv n' care, Ltd.



**SONN & PARTNER**

SINCE 1851

European and Austrian Patent,
Trademark & Design Attorneys

Luv n' care
3030 Aurora Avenue
Monroe, LA 71201

Riemergasse 14
1010 Wien, Austria
T +43 (0) 1-512 84 05
F +43 (0) 1-512 98 05

office@sonn.at
www.sonn.at

DI Helmut Sonn
DI Arnulf Weinzinger
DI Peter Pawloy
Mag. Dr.rer.nat. Daniel Alge
DI Dr techn. Georg Heger
DI Dr techn. Rainer Beetz, LL.M.

Dr phil. Heinrich Pawloy
DI Johann Köhler-Pavlik

Your Ref
Our Ref:  J 3288/1, RB/cs

Vienna, 07 11 2006

**US Patent 6, 514,275 B2**
**US Patent D441,083 S**

Dear Sirs,

our client Bamed AG is proprietor of US-patents 6,514,275 B2 and US D441,083 S

Our client has become aware of your newly-offered pacifiers which comprise a lemniscate shaped shield provided with retractions on its longer sides and having lateral openings provided on each side of a central shield opening for fastening a nipple reaching to an edge of said shield while merely leaving a shield frame portion on each side of the central opening. Additionally the shield frame comprises indentations located in the middle of each shorter shield side.

The offer for sale of such patented pacifiers infringes our client's exclusive patent rights. Thus, our clients would be entitled to a seize and desist order, damages etc.

Thus, we ask you to inform us whether in your opinion there are any reasons for neglecting our client's patent rights

We are looking forward to receive your response until

**27 November 2006.**

Kind regards

Rainer Beetz
Patent Attorney

Bank Austria, Wien
BLZ 12000, Konto Nr. 697-255-800
IBAN AT7912000006972558000
BIC BKAUATWW

Bankhaus Löbbecke & Co., Berlin
BLZ 100 305 00, Konto Nr. 00.161 861.00
IBAN DE65100305000016186100
BIC LOEBDEBB

Citibank New York
ABA# 021000089
Account No.26426157

Sonn & Partner Patentanwälte
Handelsgericht Wien, FN 230295 w
UID-Nr./VAT-No. ATU10469401
DVR: 0795232

**From:** Kathryn Fendall
**Sent:** Friday, November 24, 2006 1:03 PM
**To:** 'office@mambaby.com'
**Subject:** Attention Susanna Wagner

November 24, 2006

<u>FOR SETTLEMENT PURPOSES</u>

MAM Babyartikel GesmbH
Lorenz-Mandl-Gasse 50
1160 Wien, Austria

Attn:  Susanna Wagner
Chief Operating Officer

Re:  -German Utility Model 20 2004 005564.3 "Teat" of Bamed AG
     -Cancellation Action, official file no.: Lo 1 76/06 of New Valmar B.V.B.A.
     -Your US Patent 6514275B2 and US Patent D441083S

Dear Ms. Wagner,

I am in receipt of your letter dated November 22, 2006 as well as the November 6, 2006 letter
from Sonn & Partner to Bird and Bird to the attention of Boris Kreye.  Your letter was addressed
to my brother Jack Hakim in our New Jersey office.  In the future, please address your
correspondence to myself, Ed Hakim.  My e-mail address is eddieh@luvncare.com and my
physical address is 3030 Aurora Ave, Monroe, LA 71201.

In response to your letter, we will be more than happy to work directly with you for the purpose of
attempting to settle all of the above cases on friendlier terms.  If, in fact, you would have
contacted me personally first before going through the expensive route (the injunction), then
matters could have been handled much differently; however, you and your company chose to
take a hard line position, which, to its chagrin, you were met by an unexpected hard defeat.

In any event, to put things on a lighter basis, I am a very level headed individual who will
compromise when possible provided I am dealing with reasonable people.  I believe that we can
settle our differences amicably, and feel that the pending issues can be settled provided we work
out a global settlement that resolves all of our differences on both the German and the US patent
claims at the same time.

With respect to the German proceedings,





With regards to the two US Patents, since we have certain and specific prior art that would invalidate your US Patent 6,514,275 B2, and since our products do not look like your design in Patent D441083S, we strongly believe that if were to litigate those claims we would win on them also.  We do not believe that any reasonable jury or judge would hold against us on those US patents, and would request our attorneys fees if that case had to go forward as well.  The bottom line is, if we can come to an agreement on the US patents, and you would permanently drop your claim against our design, then I believe that we could move forward with a global settlement on all of the products listed above.

Feel free to contact me any time either in writing or by phone to discuss settlement.  I will advise our attorneys that I have decided to negotiate with you directly, but I have instructed them to proceed forward until I think a settlement between the two of us is realistic.  You may contact me by phone at 318-388-4916 extension 3127.

In closing, I would certainly like to say that the world is a large market and that there is a lot of room for both companies to operate as friendly competitors.  I would suggest that in the future if either side has a problem with the other side that prior to filing suits the doors of communication should be opened.  It makes for a much easier and less expensive resolution even though both sides can well afford attorneys' fees and or a loss; moreover, I think the road that both companies are going down currently is only going to lead to a constant filing of law suits by both sides.  Instead, I feel that we should be in the business to create and sell products rather than constantly litigate.  Unfortunately, litigation is part of the every day business in America and this is why we have attorneys on staff, but we certainly would prefer to have our attorneys spend time writing contracts and directing our business rather than engaging in litigation.

Awaiting your response, I remain.

Sincerely,




Ed Hakim
CEO


NEH/kf

# HANSMANN & VOGESER

MÜNCHEN – FRANKFURT – GÖPPINGEN
– GERMANY –

Tel.:    00 49-(0)89 / 55 292-0
Fax:    00 49-(0)89 / 55 292-292
E-Mail: info@hansmann-vogeser.de
81369 München · Albert-Roßhaupter-Straße 65

Hansmann & Vogeser · Postfach 70 08 60 · 81308 München

An das
Deutsche Patent- und Markenamt
80297 München

München:
Patentanwälte
**Vogeser** Werner, Dipl.-Ing.*▲
**Liedl** Christine, Dipl.-Chem.*▲
**Alber** Norbert*▲
Dipl.-Ing., Dipl.-Wirtsch.-Ing.
**Dr. rer. nat. Strych** Werner*▲
**Müller** Gerald, Dipl.-Ing.*▲
**Dr. Brehm** Hans-Peter, Dipl.-Chem.*▲
**Dr. Heigl** Oliver, Dipl.-Chem.▲

Rechtsanwälte
**Groß** Peter, LL. M.
**Graeser** Susanne, LL. M.

Starnberg:
Patentanwalt
**Beck** Alexander, Dipl.-Ing.*▲

in Kooperation mit:

Frankfurt:
Patent- und
Rechtsanwalt am OLG
**Dr.-Ing. Boecker**

Göppingen:
Patentanwalt
**Fürst** Siegfried,
Dipl.-Ing. (FH)*▲

\* European Patent Attorneys
▲ European Trademark
  Representative

| Ihr Zeichen<br>Your reference | Unser Zeichen<br>Our Reference | Durchwahl<br>Extension | München, den |
|---|---|---|---|
|  | 60719 ST / BO |  | 16. April 2007 |

**Aktenzeichen:**      **Gbm 20 2004 005 564**
                            **Lö I 76/06**
**Beteiligte:**           **New Valmar b.v.b.a. ./. BAMED AG**

<u>Auf die Mitteilung vom 26. Januar 2007, hier eingegangen am 01. Februar 2007:</u>

Aufgrund der Tatsache, dass die bzgl. des vorliegenden Verfahrens geführten Einigungsverhandlungen auch parallele US-Patente bzw. in den USA sowie in Deutschland anhängige Verletzungsverfahren mit einbeziehen und es demzufolge notwendig ist, die Vorgehensweise mit Vertriebspartnern sowie weiteren beteiligten Dritten in den USA abzusprechen, konnte bis zum jetzigen Zeitpunkt noch keine einvernehmliche Lösung gefunden werden.

Es wird deshalb gebeten, die Frist zur Einreichung der Widerspruchsbegründung um weitere drei Monate, also bis zum

**15. Juli 2007**

zu verlängern.

Bankverbindungen München:
Bank Details:
HypoVereinsbank (Swift: HYVEDEMMXXX)    Deutsche Bank AG (Swift: DEUTDEDBMUC)    Postbank München (Swift: PBNKDEFF)    I.D. Nr.
BLZ 700 202 70 · Konto-Nr. 882 495    BLZ 700 700 24 · Konto-Nr. 82 080 50    BLZ 700 100 80 · Konto-Nr. 1633 97-802    (V.A.T. Registration No.):
IBAN: DE29 7002 0270 0000 8824 95    IBAN: DE85 7007 0024 0820 8050 00    IBAN: DE03 7001 0080 0163 3978 02    DE 13 0497 585

Als Beleg dafür, dass gegenwärtig beide Seiten weiterhin in Einigungsverhandlungen stehen, finden sich als Anlage zu diesem Schreiben

a)    ein Schreiben der Luv n´care Ltd., Monroe, USA, vom 05. Februar 2007
b)    ein Antwortschreiben der MAM Babyartikel GesmbH, Wien, Österreich vom 01. März 2007.

Vorliegend nicht relevante Textstellen wurden hierbei aus Gründen der Vertraulichkeit geschwärzt.

Die New Valmar b.v.b.a, die vorliegend als Löschungsantragssstellerin auftritt, ist hierbei die für Deutschland zuständige Vertriebsgesellschaft der Luv n´care Ltd., während die MAM Babyartikel GesmbH als österreichischer Vertreiber der Gebrauchsmustergemäßen Sauger wirkt.

Sollte wider Erwarten eine Fristverlängerung als nicht gewährbar erachtet werden oder weitere Dokumente als notwendig erachtet werden, so wird um Mitteilung sowie um Gewährung einer kurzen Nachfrist gebeten.

Dr. Werner Strych
Patentanwalt

**Anlage:**
Schreiben der Luv n´care Ltd. vom 05. Februar 2007
Schreiben der MAM Babyartikel GesmbH vom 01. März 2007
3 Doppel der Eingabe

# *Luv n' care* Ltd.

```
701258   FEB 5, 2007    ACT WT  LTR      #PK 1
SERVICE XPR             BILL WT  LTR
TRACKING# 1Z7012586676371100    ALL CURRENCY USD
INVOICE NO.: TAMMY BANKS
PURCHASE NO.: TAMMY BANKS    MAM Susanna
                                 Wagner
HANDLING CHARGE 0.00            FRT: SHP
SHIPMENT REF RATE CHARGES:         SVC 10.64 USD
DV 0.00              COD  0.00     RS  0.00
DC 0.00              DG   0.00     SD  0.00
AH 0.00              PR   0.00     SP  0.00
TOT REF CHG  10.64   REF+HANDLING     10.64
TOT PUB CHG  47.09   PUB+HANDLING     47.09
```

February 5, 2007

**FOR SETTLEMENT PURPOSES**

MAM
Attn: Susanna Wagner
Chief Operating Officer

Re: German Utility Model 20 2004 005564.3 "Teat" of Bamed AG
    -Cancellation Action, official file no.: Lo 1 76/06 of New Valmar B.V.B.A.
    -your US Patent 6514275B2 and US Patent D441083S

Dear Ms. Wagner,

I have now had ample time since your last letter to study the situation more carefully and make this proposal. I think there are virtually two options outside of protracted litigation. The first option would be to withdraw our action against you in Germany with regards to the textured teat. We would additionally agree to the terms in our previous letter with regards to our texture and its location. Under these circumstances, you could then proceed and have your patent upheld with no objection from Luv n' care.



Along with option one, what we would receive in return ███████████████████████████
███████████████. I believe that this would be a win/win situation for both of us. As you know the alternative would be protracted litigation in Germany of which I believe you would have to agree we would most likely win.██████████████████ Additionally, with respect to your pacifier patent here in the US, we feel that, ██████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████

The second option my suggestion would be that██████████████████████████████████
██████████████████████████████████████████████████████████████████



With regards to the above two options, please let us have your comments as I think surely one of these two options is quite workable but option number one is the safest for both sides. We will obviously both be giving up something in the spirit of settlement.

As you know, we have our own in-house staff of attorneys so the cost of the litigation here in the U.S.A. will be minimal to us; however, the litigation for both of us in Europe will be very expensive along with costly litigation for you here in the U.S.A. I think in the spirit of cooperation we should both choose option one. It may not be exactly what we both want, as the ideal situations are never etched in stone for each of us. What this would do is let us both continue to operate on a global basis with the understanding that when situations arise we can work them out together without protracted costly litigation.

Please let me have your comments with regards to the above, and awaiting your response, I remain.

Sincerely,

Ed

NEH/kf

cc: Morris Cohen
Joe D. Guerriero
Blake Deshotels

· dated February 5th, 2007

..ryn Fendall

| | |
|---|---|
| **From:** | Susanna Wagner [Susanna.Wagner@mambaby.com] |
| **Sent:** | Thursday, March 01, 2007 6:04 AM |
| **To:** | Ed Hakim; Kathryn Fendall |
| **Subject:** | Your letter dated February 5th, 2007 |
| **Attachments:** | luvncare010307.doc |

Dear Mr. Hakim, dear Mrs. Fendall,

Enclosed please find our reply to your above mentioned letter.

With best regards

Susanna
<<luvncare010307.doc>>



Mr.
Ed Hakim
Luv n'care Ltd.

3030 Aurora Avenue
Monroe, LA 71201
USA

Vienna, 1. März 2007

Re:  German Utility Model 20 2004 005564.3 „Teat" of BAMED AG
     Cancellation Action, official file no.: Lo 1 76/06 of New Valmar B.V.B.A.
     US Patent 6514275B2 and US Patent D441083S

Dear Mr. Hakim:

Many thanks for your letter of February 5, 2007 in which you outlined possible options for an amicable agreement from your point of view. It took us some time to come back to you, as we had to discuss the matter extensively with our exclusive distributor in the USA, ███████, and to find a mutual understanding between ███ and ourselves.

We agree with you that a settlement outside of protracted litigation would be most favourable for both sides. Thus, we are happy to hear that you agree with the terms set out in our previous letters with regard to our dispute concerning baby bottle teats having a rough surface area.

However, since we are bound by contract to ████ to defend and enforce our intellectual property rights in the U.S., we cannot grant you the right to continue selling your pacifiers with the infringing frame shield. However, we could offer you that w████████████████████ ██████████████████████████████████████████████████ ██████████████████████ This would also be an acceptable solution for our exclusive distributor in the U.S. bearing in mind that the First Year's pacifiers referred to by you do not at all anticipate such ████████████████████████████████ Also whatsoever butterfly shaped pacifier shields having a full surface do not invalidate our U.S. patents.

MAM Babyartikel GesmbH, Lorenz-Mandl-Gasse 50, 1160 Wien, Austria
Phone +43-1-49 141-0, Telefax +43-1-49 141 404
email: office@mambaby.com, web: http://www.mambaby.com/
Bank affiliation: Bank Austria 255-106-002/00, FN 1104652, HG Wien



As your second option basically will lead to further litigation in Germany and the U.S. we do not see how this option could be the basis for an amicable settlement. Additionally, the design being sent to us and marked as No. 4 obviously still falls within the scope of our U.S. patents.

However ███████████████████████████████████████████████████████ ███████ould be a compromise, our U.S. distributor and you should be able to live with. Therefore, we consider this as a win-win situation for both of us.

I'm looking forward to hearing from you whether this offer does meet with your approval.

Yours sincerely,

Susanna Wagner
Chief Operating Officer

MAM Babyartikel GesmbH, Lorenz-Mandl-Gasse 50, 1160 Wien, Austria
Phone +43-1-49 141-0, Telefax +43-1-49 141 404
email: office@mambaby.com, web: http://www.mambaby.com/
Bank affiliation: Bank Austria 255-106-00200, EN 1104657, HG Wien

## Karen Farmer

**From:**  Karen Farmer

**Sent:**  Thursday, September 27, 2007 9:27 AM

**To:**  'rickh@pfiserves.com'

**Subject:** Luv n' care, Ltd. vs. Bamed AG

Rick,

Please give me a status on the service in connection with the above referenced subject as well as an estimate regarding the length of time it will take to perfect service.

Thanks,

*Karen S. Farmer, Paralegal*
*Luv n' care, Ltd*
*3030 Aurora Avenue*
*Second Floor*
*Monroe, Louisiana  71201*
*(318) 338-3084*

**Karen Farmer**

**From:** System Administrator
**To:** Rick Hamilton
**Sent:** Thursday, September 27, 2007 9:28 AM
**Subject:** Delivered:Luv n' care, Ltd. vs. Bamed AG

Your message

    To:        rickh@pfiserves.com
    Subject:   Luv n' care, Ltd. vs. Bamed AG
    Sent:     9/27/2007 9:27 AM

was delivered to the following recipient(s):

    Rick Hamilton on 9/27/2007 9:30 AM

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Rick Hamilton
633 Yesler Way
Seattle, WA 98104

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _Dan Speck_    ☑ Agent    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

VAN SPECK    8/21/07

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered    ☐ Return Receipt for Merchandise
   ☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)    7006 3450 0001 1374 3004

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

RECEIVED AUG 2 1 2007

Joe D. Guerriere
3030 Aurora, 2nd fl.
Monroe La 71201

(BHMED)

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | 1.48 |
| Certified Fee | | 2.65 |
| Return Receipt Fee (Endorsement Required) | | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 6.28 |

MONROE LA
Postmark
AUG 16 2007
USPS - 71203

Sent To
Rick Hamilton
Street, Apt. No.; or PO Box No.
633 Yesler Way
City, State, ZIP+4
Seattle, WA 98104

PS Form 3800, August 2006    See Reverse for Instructions

7006 3450 0001 1374 3004





**CEO**

Ed Hakim

**President**

Joseph Hakim

**Corporate Office**

P.O. Box 6050
Monroe, LA 71211

3030 Aurora Ave.
Monroe, LA 71201

Phone: 318.388.4916

Fax: 318.388.5892

**Legal Department**

Joe D. Guerriero
*General Counsel*

**U.S. Sales President**

Jack Hakim

257 Monmouth Road
Building B, Suite #5
Oakhurst, NJ 07755

Phone: 732.531.5757

Fax: 732.531.5331

**Int'l Sales President**

Michael Ariel

7276 Sidonia Court
Boca Raton, FL 33433
USA

Phone: 561.338.3034

Fax: 561.391.6261

*www.nuby.biz*

August 15, 2007

**CERTIFIED – RETURN RECEIPT REQUESTED**
Mr. Rick Hamilton
633 Yesler Way
Seattle, WA 98104

Dear Rick:

As per your instructions, I am enclosing herein the translated version of the Complaint and Summons for service in Switzerland. The address to be served on the defendant, "BAMED AG" is on the summons, namely:

> BAMED AG
> Wilenstrasse 17
> 8832 Wollerau
> Schweiz

I am enclosing a check in the amount of $450.00 which I understand represents your charge for making this service through THE HAGUE CONVENTION.

It is my understanding that the translated pleadings do not have to be legalized.

If any of my comments are incorrect please contact me immediately. My direct line is 318-338-3603.

Best regards,

Joe D. Guerriero

JDG/slr
Enclosures



*Lyn'care, Ltd.*

P. O. BOX 6050
MONROE LA 71211

84-487
1111

| CHECK NO. | CHECK DATE | VENDOR NO. |
|-----------|------------|------------|
| 50861 | 08/15/07 | P.F.01 |

CAPITAL ONE
MONROE LA

FOUR HUNDRED FIFTY AND 00/100 DOLLARS

CHECK AMOUNT
$450.00

PAY
TO THE
ORDER
OF

P.F.I.

LA

NOT VALID AFTER 90 DAYS

AUTHORIZED SIGNATURE

⑂ Security features are included. Details on back.

⑈⑈050861⑈⑈ ⑈:⑈⑈⑈⑈10487954: 20⑈⑈2284, ⑈⑈⑈

Page 1 of 1

**Karen Farmer**

| | |
|---|---|
| **From:** | Joe D. Guerriero |
| **Sent:** | Friday, August 10, 2007 10:00 AM |
| **To:** | Karen Farmer |
| **Subject:** | FW: 60372: Translation Delivery: Luv N' Care, Ltd-Petition into Swedish |
| **Attachments:** | LNC.BAMEDAG.PLEADINGS_se.doc; Summons Issued_se.doc |

Karen...Important follow up for Monday morning!   Thanks   Joe D.

---

**From:** Mary Shillue [mailto:mshillue@ricintl.com]
**Sent:** Friday, August 10, 2007 8:11 AM
**To:** Joe D. Guerriero
**Cc:** Amit Johar
**Subject:** 60372: Translation Delivery: Luv N' Care, Ltd-Petition into Swedish

Dear Joe,

Thank you for choosing RIC International for your translation project. Please find your translation attached. Please let me know if you have any questions or concerns on the translation.

Best Regards,

Mary Shillue
Account Executive

RIC International
tel: 617-621-0940 x120
fax: 617-621-2552
mshillue@ricintl.com
www.ricintl.com
Precision Translations for Worldwide Markets

POWERED BY
BNET.com

FindArticles > Discount Store News > Oct 20, 1997 > Article > Print friendly

**JPMA hops into licensing bus; Pooh, Looney Tunes, Disney and Sesame Street rule - Juvenile Products Manufacturers Association exhibits various products for infants and toddlers featuring Winnie the Pooh, Baby Looney Tunes, Disney Babies and Sesame Street licenses**

Laura Liebeck

DALLAS -- Licensing is big business for the diaper set, even for infants who can't yet hold up their heads.

*(handwritten: SEE REFERENCE TO MAM ON PAGE 3)*

At last month's Juvenile Products Manufacturers Association annual show in Dallas, hundreds of new products, plus updated existing ones, featured four key licenses that appeared in showroom after showroom: Baby Looney Tunes (now celebrating its first anniversary); Disney Babies (now available in a new 3D-effect process); Sesame Street (thanks to the overwhelming success last year of Tyco's Tickle Me Elmo doll and resulting line extensions); and Winnie the Pooh (both classic and updated versions). The characters were featured on nearly every juvenile product imaginable including bedding, bath, diaper bags and feeding items.

Products designed for the mass market were generally offered in either bright pastels or primary colors, compared to more subdued colors and applications slated for department stores. Soft goods, created for such mid-tier retailers as JCPenney, Sears Burlington Coat Factory and Babies "R" Us, often featured elements of both. This year denim and chambray fabrics graced many products, recreating the Baby Gap and OshKosh looks that are popular in apparel.

In such traditional juvenile products as high chairs. strollers, play yards and car seats, multiple-use themes dominated. Many manufacturers offered products that could be used in a variety of ways, extending the lives of the products. Particularly popular this year were infant car seats that fit into strollers; high chairs that transform from an infant feeding chair to a toddler seat and then into a casual-use chair; play yards with bassinet inserts, and potty seats that double as step stools.

Other trends at this year's show included:

* No-spill sippy cups;

* Color-changing feeding tools to tell parents when the food is too hot (with similar technology used for some bath toys);

* Gift sets that combine bedding, bath, feeding and play in diaper bags, buckets or storage boxes;

* Strollers with all-terrain wheels and other more rugged-looking features, playing off the popularity of mountain bikes;

* Vibrating teethers;

* Walkers with extra safety features.

* Car seats with extra safety features in anticipation of new, stricter federal guidelines, particularly with the car tether.

This year's JPMA show, held Sept. 27 to 30 at the Dallas Apparel Mart, featured 365 exhibitors spanning 600,000 sq. ft. Over 8,000 people were expected, making the event the largest in the association's 28-year history of hosting trade shows. Next year's show is scheduled to begin on Oct. 25, again in Dallas.

Juvenile products is a $4.23 billion industry at retail, a business that has grown over 400% since 1980 when sales were $850 million. Fueling the growth is the large number of births each year, now a bit shy of 4 million.

While thousands of products were on display, JPMA created a program that recognizes creativity and innovation in juvenile products called the "Show Off" Product Competition. Ten winners were selected by an industry panel. The winners were:

* Arm's Reach Bedside Co-Sleeper by Baby Trend: A play yard with insert to keep the infant at bed height for parents, making nighttime feedings within each reach.

* Ready Freddy time-out watch by Camp Kazoo: A timer that can be worn as a watch and which can count down 99 minutes.

* Century Next Step Car Seat: Transitions from infant car seat to adult vehicle seatbelts, adjustable side supports, recline and upright seat position and a lap/shoulder harness clip to keep the belt away from a child's neck.

* Gerry Amuse & Cruise Activity Center Wagon by Evenflo: An activity center and wagon in one. The activity center insert can be removed for easy wagon use.

* Animal Heads Up/Strap Cover by Gold Bug: A car seat cover with straps in assorted animal designs.

* Kelty Kangaroo Infant Carrier by Kelty Pack: An infant carrier that positions baby's weight on an adult's hips and waist instead of shoulder and neck.

* 1-2-3 Discovery Lane by The Maya Group: A three-stage modular play surface for children 3 to 18 months, featuring 10 activities that can be assembled in a variety of configurations.

* Power Strip Cover by Mommy's Helper: A secure cover for electrical strips.

* Teething Blanket by Munchkin: All-cotton blanket with attached pacifier and easy-to-grip edges.

* Bath Mobile by Summer Infant Products: "Noodle" activity arch for the bath attached to tub with suction cups.

Among the many other new products introduced at the show were:

* Century: The Next Step Car Seat; Grow With Me High Chair featuring side feeding tray and infant to toddler uses; Fold-n-Go Care Center, a play yard with bassinet and changing table insert on wheels with side storage.

* Cosco: Travel Vest car seat without the hard shell; Options High Chair/Youth Chair; infant to toddler chair-feeding system;

* Dolly: Musical wall art in popular licenses; diaper bag gift sets; voice activated night crib light.

* Evenflo: Stage cups, which includes nipple, sippy and straw drinking methods, part of the entire new line of feeding products.

* Fisher-Price: Remote Control Soother for crib; Pop Up Play Seat, play quilt and infant seat in one; Grow With Me Patio Table, height-adjustable and collapsible round patio set.

* Gerber Childrenswear: Mini sleeping bag with attached pillow in a see-through plastic tote.

Case 1:07-cv-00608-SLR-MPT    Document 26-6    Filed 01/28/2008    Page 3 of 6

* Gerber Products: New bath line of toys; training plate with rounded bowl edges and a suction bottom; one-piece nipple system.

* Graco: Baby Monitor with two receivers and Ultra Clear Monitor with light indicator; Graco Pram, converts from a pram to a stroller with a four-position seat and three height adjustments.

* Kolcraft: Secure car seat with a harness support made of pliable plastic; walker made with a 39-in. base.

* Luv n' Care: Dr. Seuss line of bibs and no-spill cups; six-stage feeding system, wide-mouth bottle that grows with the child.

* Playskool: One-piece spillproof cups with one-piece mechanism with nipple in the lid; Magic Reward Potty Step Stool with a bull's-eye star in the receptacle and an "I did it" door hang; color change bowl and spoon.

* Playtex: Cool Straw, lightly insulated cup with built-in straw; Eazy Feed Drop Ins Nurser with a burping feature gauge.

* Safety First: Musical Baby Gym & Walker; Fold-Up Potty.

 * Sassy/Mam: Dunk & Clunk developmental sorter; teethers that get to the back teeth; new bath toys line.

* Step 2: Snooze 'n Cruise toddler bed.

* The First Years: All-in-One High Chair, infant carrier and multi-position chair and toddler seat; ComforTemp underarm thermometer.

COPYRIGHT 1997 Reproduced with permission of the copyright holder. Further reproduction or distribution is prohibited without permission.
COPYRIGHT 2004 Gale Group



**BabyShop** Worldwide
*A companion newsletter to Baby Shop Magazine*

**June 2004**

## In This Issue:

* Featuring - 11 Powerful Marketing Tips

* Meet the Maker - Up & Away, Inc.

* Trade Show Info - Read the Latest News About the Juvenile Product Trade Shows

* Baby Buzz - Product News and Press Releases from the Juvenile Product Industry

## Also See:

* Product Update Pages
* Highlights For Next Issue of Baby Shop Magazine
* Baby Shop and eBabyShop Archives

# Trade Show Information

Read news from: Kind + Jugend | JPMA

## Kind + Jugend – World's Largest Children's Outfitting Show

The restructuring of Kind + Jugend with a sharper focus on hardware is gaining widespread acceptance. With seven months to go before the start of the fair, almost all of the renowned hardware manufacturers have already registered to take part. For Markus Oster, Vice President at Koelnmesse GmbH, this is a clear vote of confidence for the new concept and the Cologne exhibition centre: "An additional boost has been provided by turning the conceptual focus more towards hardware and rescheduling Kind + Jugend for September. We have already received a large number of registrations, proving that the children's outfitting sector regards the Cologne event as the most important international trade fair and presentation platform."

Kind + Jugend will take place from 17th to 19th September 2004 and is expected to attract around 500 exhibiting companies, of which more than 400 suppliers will be presenting hardware products from the following segments: children's furniture, child safety seats, prams and buggies, textile outfittings, toys and games, and plastic, electrical and hygiene articles. The participating market leaders include Dorel Juvenile, Britax-Römer and Teutonia, Chicco, Mapa, Avent Cannon, Mam, Geuther, Paidi, Zöllner and Philips. The companies Mattel (Fisher Price), European Nursery Group, SIGG and Gruppo Giordani Giochi Preziosi will be taking part for the first time. What's more, numerous suppliers such as Alvi, Emmaljunga, Hoco, Jane, Tiny Love, MacLaren and Candide have once again expanded their stand areas. IGEKA, the interest group of the children's speciality stores, will also be presenting its products at a larger stand area, thus underlining Kind + Jugend's strong position as the world's largest and most important trade fair of its kind.

Both hardware products and the latest children's fashion will be presented at Kind + Jugend. Jacadi, Versace Young, Celebrity Kids, Jacky, Bondi-Dress, Malerba, Elting, Laufer and Baby-Staab are just some of the companies that have already confirmed their participation at this early stage. Full-range suppliers and related groups in particular will be able to profit from the close proximity to hardware suppliers.

Further information on **Kind + Jugend** and the range of services available can be found at: www.kindundjugend.de

**Kind + Jugend**
17th to 19th September 2004


**TOP**

## 2004 International JPMA Show A Quality Event



The recent 2004 International JPMA Show is proud to have maintained its status as the premier pre-natal to pre-school trade show in North America.

Hosting more than 1,270 buyers (967 

domestic and 305 international), representing 772 companies, the 322 exhibitors (115 first time exhibitors) experienced valuable retailer attendance.



*"Many exhibitors have told us more orders were written at this show than any other show in recent history,"* commented Robert Waller, JPMA president. *"And ninety-five percent of retailers and exhibitors participated in Appointment-Only Day - our highest Appointment-Only Day participation ever - which proved the industry came to Dallas to work."*

Robert Omansky, national sales director of Munire Furniture commented, " could not have been more pleased with the response we received. Everyone hoped to see came to visit our showroom. Our showroom was always busy. We have no doubt this show was extremely worthwhile attending."



*"We found the show to be quite beneficial for us, both from the quality buyers that came through our showroom to the peripheral meetings that were held. As marketing manager I was also very pleased with the number of media representatives that took the time to stop by and chat with us,"* said Carole Childs, marketing manager for KidCo.

Retailers also expressed their pleasure - from the quality of exhibitors, thousands of show specials and hundreds of new products, to the many show enhancements. Attendees experienced an enhanced show layout, to the many JPMA greeters and staff, to a variety of seminars, networking events and much more.

Along with the traditional Innovation Awards, Product Showcase, new products and trade show directories, the show hosted the winners of the first Annual JPMA Student Design Competition. Students from colleges and universities across the country competed for cash prizes and the opportunity to display their winning designs and talents.

*"The 2004 JPMA show provided opportunities above and beyond my expectations. I made great connections as well as what I believe will be life-long friendships. I am extremely grateful to JPMA for the honor and the memorable experience,"* said Rebecca Finell, the grand prize winner and a junior at Arizona State University.



The Juvenile Products Manufacturers Association is a national trade organization of more than 340 companies in the United States, Canada and Mexico. These companies manufacture and/or import infant products such as cribs, car seats, strollers, bedding, and a wide range of accessories and decorative items. For more information about JPMA, visit the

Web site at www.jpma.org or call 856-638-0420.



Feature Article | Meet The Maker | Trade Show Info | Baby Buzz

**A Spindle Publishing Company, Inc. Production**
Subscribe | Unsubscribe

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LUV N' CARE, LTD                    Civil Action.:   4:06cv486

      Plaintiff,

   v.

BAMED AG,                              JURY TRIAL

     Defendant

## **MOTION**

Luv n' care, Ltd. had previously filed a motion asking for an extension of time within which it makes service on the defendant Bamed AG and this court graciously signed an order on July 5th, 2007 granting an additional 90 days to make said service.

Luv n' care, Ltd. shows, however, that despite the fact that it immediately had the summons and complaint transcribed into Swiss and sent off for service through Process Forwarding International to make said service, it learned today that the papers had been sent back from Switzerland as being "Non-translated"; Process Forwarding International could not figure out why the papers had been sent back since there was a complete translation of the summons and the complaint into Swiss, but upon inquiry being made it was discovered that the Canton (state) in Switzerland is a Germany speaking province and the papers had

to be translated into German, a fact not know to either plaintiff or to Process

Forward International at the time the service was requested.

Mover shows that in light of the above set of facts and that the 90 days

previously granted extension expires today, plaintiff reluctantly asks this

Honorable Court for an additional 90 day extension within which to have the

summons issued and service made on the defendant according to the International

Rules required for said service.


Respectfully submitted,


Joe D. Guerriero
3030 Aurora Avenue, Second Floor
Monroe, Louisiana 71201
Telephone:    (318) 338-3603
Facsimile:    (318) 388-5893
E-mail:        joed@luvncare.com

Morris E. Cohen
Law Office of Morris E. Cohen, P.C.
1122 Coney Island Avenue
Suites 216-217
Brooklyn, New York 11230
Telephone:    (718) 859-8009
Facsimile:    (718) 859-3044
E-mail:        mcohen@ipcases.com

Attorneys for Luv n' care, Ltd.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

LUV N' CARE, LTD                    Civil Action.:    4:06cv486

        Plaintiff,

    v.

BAMED AG,                                JURY TRIAL

      Defendant

## **ORDER**

Considering the above and foregoing Motion for Extension of Time (Dkt. No. 6),

IT IS ORDERED that Luv n' care, Ltd. be GRANTED ninety (90) days from the

date of this order within which to obtain summons and make service upon Defendant

Bamed AG.

**SIGNED this _____ day of _____, 2007.**


_____

UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAM BABYARTIKEL GMBH, and
BAMED AG,
                         Plaintiffs,
            v.

LUV N' CARE, LTD. and,
MUNCHKIN, INC.

                         Defendants.

**Civil Action No.:** 07-608-***

### Declaration of N. Edward Hakim

N. Edward Hakim hereby declares the following under penalty of perjury of the laws of the United States:

1.  I am the Chief Executive Officer of Luv n' care, Ltd., one of the Defendants in the above-captioned litigation.

2.  In my field, the baby products industry, there is a well known Juvenile Products Manufacturer's Association (JPMA) trade show each year which attracts international participation. That show was held for many years in Texas, until recently when it was moved (approximately two years ago) to Florida.

3.  I have repeatedly attended that show, and can attest that Plaintiff Mam Babyartikel has regularly displayed and offered its products for sale at that trade show in Dallas, Texas on many occasions over the years.

4.  Likewise, it is my belief that Plaintiff Bamed AG's products, which are related to the subject matter of this suit are regularly shipped to Texas. Specifically, my belief is based on the fact that, to the best of my knowledge, Bamed's products are sold in Texas after they are shipped to the Wal-Mart warehouses in Texas designated for distribution throughout Texas.

Dated: January 28, 2008

N. Edward Hakim
CEO, Luv n' care Ltd.